OLIVER BRONSON *et al.* v. COGSWELL K. GREEN *et al.*

Contracts are to be construed according to the intention of the parties, as expressed in them.

Where several contracts are executed by the same parties at the same time, and relating to the same matter, they are to be construed together.

Where one writing refers to another, the intention of the parties is to be gathered from the two construed together.

Where one contract grows out of another to which it refers, and both are in writing, the first may be looked into to ascertain the intention of the parties in the latter, if it is not clearly expressed therein.

THIS was a hearing on demurrer to a bill for specific performance.

The bill states that on November 5th, 1835, articles of agreement were entered into between the complainants and Green, one of the defendants, for the purchase of real estate in Michigan, Wisconsin, Indiana, and Illinois; that the complainants were to furnish the money, and Green,

as their agent, was to invest it in the purchase of such real estate as he might select, the title to which was to be taken in the name of the complainants. Green was to have charge of the lands after they had been purchased, pay the taxes thereon, and sell them to the best advantage for the complainants, and close his agency within five years, unless further time should be given him for that purpose. That, for his services, he was to receive one third of the profits, after repaying to the complainants the money advanced, with interest and expenses; and he guarantied to the complainants the repayment of all moneys invested by him, and all costs, charges and disbursements incident to the investment, with interest on one third part thereof, at the expiration of five years. Green was to pay over to the complainants, from time to time, all moneys received by him on sales &c., which moneys were to be applied by them in payment of what they had advanced; and all questions that might arise concerning the management or disposition of the lands, or the manner of conducting sales, whether for cash or credit, were to be settled by a majority in interest. On the first day of January, 1839, the complainants had advanced to Green on the aforesaid contract, including interest, $12,310.60. On the 24th day of June in the same year, the parties entered into another contract, a part of which is in these words: "Memorandum of an agreement entered into this 24th day of June, A. D. 1839, between Oliver Bronson and Arthur Bronson of the first part, and C. K. Green of the second part, witnesseth, that the said parties of the first part covenant and agree, that the lands and lots purchased under a certain contract between the said parties of the first and second part, dated November 5th, 1835, shall be exposed for sale, at public vendue, on the first day of October next, at Niles, in Michigan, or at such other place as said Green

may elect, in Illinois or Michigan, on the following terms of payment: one fourth cash on the day of sale, the residue in three equal annual payments, with interest annually, at seven per cent per annum, no sale to be made of quantities less than eighty acres, nor shall any lands be sold for less than two dollars and fifty cents per acre, nor shall any of said town lots be sold (except with the consent of the parties) below first cost, except the village lots in Constantine, which last mentioned lots are to be sold in the discretion of said Green, and the said parties of the first part agree to execute contracts of sale, on receiving the payment of one fourth in cash as aforesaid, agreeably to the terms aforesaid; and the said parties of the first part further covenant and agree to account to, and pay over to said Green all sums of money, and transfer to him all securities, and convey to him all lands that may remain in their possession after they shall have received the sum of $12,310.60, with interest at seven per cent per annum from the first day of January last, to be computed annually, together with all costs and expenses and taxes that may be incurred in the premises." In consideration of which, Green covenanted that he would, immediately after the said first day of October, execute and deliver to the complainants his bond and mortgage on certain property he owned in the village of Niles, for the said $12,310.60 and interest. The proceeds of the lands to be sold were to be applied on the bond and mortgage, when received by the complainants, and the bond and mortgage were to be paid within five years. Green did not sell the lands on October 1st, 1839, nor had he executed to the complainants his bond and mortgage.

The defendants demurred.

*S. Barstow,* in support of the demurrer.

*J. F. Joy,* contra.

Bronson *v.* Green.

THE CHANCELLOR.   Green insists that the sale of the lands on October 1st, 1839, was a condition precedent to the giving of the mortgage, and that, by the last contract, it was the duty of the complainants, and not of himself, to sell them.   This is the only question, and the decision of the Court must depend on the construction to be given to the complainants' covenant in the contract of June 24th, 1839, that the lands purchased under the contract of 1835, should be exposed for sale, at public vendue, on the first of October then next.

Contracts are to be construed according to the intention of the parties, which is to be looked for in the contract itself.   And, when several instruments, relating to the same matter, are made between the same parties at the same time, they form one entire contract, and are to be construed together.   *Jackson* v. *McKenney*, 3 *Wend. R.* 233; 10 *Pick. R.* 302.   So, where one writing refers to another, the intention of the parties is to be gathered from the two instruments taken together.   *Cow. & H. Notes, p.* 1420, *and cases there cited.*   On the same principle, when one contract grows out of another to which it refers, and both are in writing, the first contract may be looked into to get at the intention of the parties in the last, when that intention is not clearly expressed on the face of the contract itself.

By the contract of June 24th, 1839, the complainants covenanted that the lands purchased under the contract of November 5th, 1835, should be exposed for sale, at public vendue, on the first day of October then next.   The covenant does not say in express terms that they shall be exposed for sale by the complainants.   This is an inference merely, drawn from the fact that the complainants are the covenantors, and it would be conclusive, were it not inconsistent with other parts of the same contract, and with the previous contract of November, 1835.   That the

complainants were to sell the lands, instead of Green, is inconsistent with other parts of the contract. The sale was to be at Niles, in Michigan, or at such other place as Green might elect in Illinois or Michigan. If Green was to sell them, it was proper that he should have the selection of the place of sale, more especially as they had been purchased by him, and he was better acquainted with their location, and the situation of the country, than the complainants. If the complainants were to sell them, the contract is deficient in not requiring Green to select the place of sale, and notify the complainants of it, a suitable length of time before the first of October, when the sale was to take place. Again, the contract, after stating the minimum price at which sales may be made, says the lands in Constantine may "be sold in the discretion of said Green." The only inference to be drawn from this is, that Green was to sell the lands. He might sell the Constantine lots at such prices as he thought proper, although he was restricted in the price of the other lands. The contract further provides that the complainants shall "execute contracts of sale, on receiving the payment of one fourth in cash," &c. If complainants were to sell the lands, this was altogether unnecessary. It could not in any way affect their contracts with the purchasers at the sale. But, if the lands were to be sold by Green, as the title was in the complainants, it was a recognition of his agency and authority to sell, and an undertaking on the part of complainants to execute the contracts he might make. But all ambiguity as to the intention of the parties is removed, when we take the two contracts together. By the first contract, Green was to purchase the lands, to take the title in the name of complainants, to take the agency of them after they were purchased, and to sell them to the best advantage for complainants. But when

Bronson *v.* Green.

and how was he to sell them? That was left to be subsequently arranged between the parties. The contract provides that all questions which may arise relative to the management or disposition of the lands, or the manner of conducting the sales, whether for cash or credit, shall be determined by a majority in interest. Green was bound to sell them, when they were to be sold, but he could not sell them without the consent, express or implied, of a majority in interest. This was given by the contract of June 24th, which fixes the time, manner and conditions of sale, and leaves the place of sale, under certain limitations, discretionary with Green. It is in this light I consider the covenant of the complainants, and it seems to me there can be no doubt on the question, when the two contracts are taken and construed together. I cannot think it was the intention of the parties to release Green from the obligation he was under to sell the lands.

It was said on the argument, that Green should have had a power of attorney from the complainants, to sell. That was not necessary. The two contracts gave him ample power for that purpose.

Demurrer overruled.